IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**ZACHARIAH KELLY**,

    Plaintiff,

v.

**CAROLYN COLVIN**,

    Defendant.

Case No. 2: 15-cv-00032-SI

**OPINION AND ORDER**

George J. Wall, 1336 East Burnside Street, Suite 130, Portland, OR 97214. Of Attorneys for Plaintiff.

Billy J. Williams, Acting United States Attorney, and Janice E. Hebert, Assistant Unites States Attorney, 1000 Southwest Third Avenue, Suite 600, Portland, OR 97201-2902; Jeffrey E. Staples, Special Assistant United States Attorney, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104-3706. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Zachariah Kelly ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI"). For the following reasons, the Commissioner's decision is REMANDED.

PAGE 1 – OPINION AND ORDER

**STANDARD OF REVIEW**

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *Id*. "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (internal quotations omitted)). The reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id*.; *see also Bray*, 554 F.3d at 1226.

**BACKGROUND**

**A. Plaintiff's Application**

Plaintiff protectively filed an application for DIB and SSI on December 2, 2010, alleging disability beginning on January 19, 2010. Plaintiff alleges disability due to Asperger's Syndrome, anxiety, Post-Traumatic Stress Disorder ("PTSD"), and comprehension and communication deficits. The Commissioner denied Plaintiff's application initially on May 3,

PAGE 2 – OPINION AND ORDER

2011, and upon reconsideration on December 7, 2011. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). An administrative hearing was held on May 9, 2013. The ALJ found Plaintiff not disabled. After consideration of new evidence, the Appeals Counsel denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Plaintiff now requests judicial review of that decision.

**B.  The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

> 1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.
>
> 2.  Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R.

PAGE 3 – OPINION AND ORDER

        §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

See also *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

      The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this

PAGE 4 – OPINION AND ORDER

burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

**C. The ALJ's Decision**

The ALJ noted that Plaintiff met the insured status requirements of the Social Security Act through December 21, 2015. The ALJ proceeded to apply the sequential process. At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since his alleged disability onset date. At step two, the ALJ concluded that Plaintiff suffers from the following severe impairments: an adjustment disorder with anxiety and depressed mood; fetishism (rule out pedophilia); paraphilia NOS (not otherwise specified); and "Asperger's syndrome." At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled one of the specific impairments listed in the regulations.

The ALJ then determined that Plaintiff had the RFC to perform a full range of work at all exertion levels, but Plaintiff could only have occasional contact with supervisors and co-workers, minimal contact with the public, and no contact with minors. Under step four, the ALJ concluded that Plaintiff was capable of performing past relevant work. The ALJ also found, in the alternative at step five, that Plaintiff could perform other work in the economy including a commercial cleaner, floor cleaner, and laundry laborer. Based on the finding that Plaintiff could perform past relevant work and other work that exists in significant numbers, the ALJ found that Plaintiff was not under a disability from the alleged disability onset date to the date of the ALJ decision.

**DISCUSSION**

Plaintiff argues that the ALJ's decision is erroneous because: (A) it is not supported by the record as a whole in light of the new evidence; and (B) the ALJ improperly discredited Martha Ann Brown's lay witness testimony.

**A. New Evidence**

Plaintiff argues that the ALJ's decision is not supported by substantial evidence in light of the new documents submitted to the Appeals Council following the ALJ's unfavorable decision. The Ninth Circuit has held that additional exhibits that the Appeals Counsel considers become part of the record and must be considered by a court on review. *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012). Here, the additional evidence includes a psychological evaluation by Shane P. Haydon, Ph.D, and Plaintiff's past employment records. AR 259-683.

**1. Dr. Haydon's Psychological Evaluation**

Dr. Haydon completed a psychological evaluation report on Plaintiff on March 23, 2011, more than two years before Plaintiff's hearing. The evaluation was not submitted to the ALJ, but the evaluation was submitted to the Appeals Counsel after the ALJ's unfavorable opinion.[1] In the evaluation, Dr. Haydon concluded that the diagnosis of Plaintiff's Asperger's syndrome was accurate. AR 817. After a lengthy discussion of Plaintiff's unhealthy sexual propensities, Dr. Haydon also diagnosed Plaintiff with Paraphilia NOS because of Plaintiff's preoccupation with infants urinating on him, as well as an ancillary foot fetish. *Id.* Dr. Haydon opined that Plaintiff exhibited borderline to mild impairments in adaptive skills. AR 814. Rather than provide a basis for overturning the ALJ's decision, Dr. Haydon's findings corroborate the ALJ's conclusions.

---

[1] Plaintiff's original counsel apparently did not know about this report and Plaintiff's second counsel found the report after the ALJ issued his opinion.

For example, Dr. Haydon's report did not identify any functional limitations with Plaintiff. AR 810-17. Additionally, Dr. Haydon's identification of Plaintiff's inappropriate sexual fixations verifies the ALJ's conclusion that Plaintiff should avoid contact with minors.

Dr. Haydon's examination report does not infuse any new information into the record; rather, it restates Plaintiff's medical, criminal, and familial history without providing a novel diagnosis or recommendation. This report does not render the ALJ's determinations unsupported by substantial evidence in the record.

### 2. Plaintiff's Past Employment Records

Plaintiff also submitted past employment records from OHSU to the Appeals Counsel in an attempt to illustrate that OHSU provided special accommodations to Plaintiff while he was working as a food service worker in the facility. The Appeals Counsel found that this new evidence failed to provide a basis to overturn the ALJ's decision. Plaintiff argues that this new evidence demonstrates considerable employment accommodations amounting to sheltered employment, which is not competitive employment, and demonstrates that the ALJ's conclusion that Plaintiff did not previously receive significant accommodations in the workplace is not supported by substantial evidence in the record.

The ALJ found that the evidence did not demonstrate significant accommodations at Plaintiff's OHSU position. The ALJ specifically relied upon evidence that in October 2008, Plaintiff's managers counseled him for taking extended breaks without authorization. AR 26. The ALJ also noted that in February 2009, some changes would be made to Plaintiff's "reasonable accommodations," but the ALJ found it was unclear what Plaintiff's original accommodations were. *Id.* The ALJ concluded that the amended accommodations consisted primarily of a commitment to clearly articulate Plaintiff's job expectations and that Plaintiff

would accept training regarding proper execution of his job. *Id.* The ALJ reasoned that these were not significant accommodations. *Id.*

After determining Plaintiff's RFC and consulting with the vocational expert, the ALJ found that Plaintiff was capable of performing his past relevant work of food service worker as generally performed in the national economy. AR 28. The ALJ found, in the alternative, that Plaintiff was capable of performing other jobs existing in significant numbers in the economy. AR 29.

In light of the new evidence submitted relating to Plaintiff's past employment records, the ALJ's conclusion that Plaintiff did not receive significant accommodations while working at OHSU is unsupported by substantial evidence in the record. The evidence shows that Plaintiff's position at OHSU equated to a sheltered work environment. A plaintiff working in a sheltered workshop may not have the ability to do substantial gainful activity. 20 C.F.R. §§ 404.1573(c), 416.973(c). A sheltered workshop includes special conditions such as allowing a plaintiff to: (1) work irregular hours or take frequent rest periods; (2) be assigned work especially suited to his impairment; or (3) work with less productivity or efficiency than other employees. *Id.*

The new evidence shows that Plaintiff's accommodations extended beyond clearly articulated expectations. For example, Plaintiff's supervisors changed Plaintiff's schedule to allow him to begin work at 10:00 a.m., so he would have fewer pots and pans to wash. AR 322-23. Additionally, Plaintiff's failure to complete his end-of-shift duties resulted in implementation of a new system, allowing Plaintiff to stop his regular duties early. AR 314. These changes not only demonstrate that Plaintiff worked irregular hours, but that his hours were changed to result in work suited to his impairments.

PAGE 8 – OPINION AND ORDER

The record also includes multiple examples of Plaintiff's substandard work and behavior that did not result in Plaintiff's termination. For example, an employee performance review reported that Plaintiff

> had some trouble following the schedule for break time . . . continued to fail to complete his end of shift duties before leaving for the night . . . [failed] to arrive and clock in on time each and every day . . . continues to resist changing his approach or the content of his work when asked to do so by his managers . . . has not engaged in respectful communication.

AR 314. Additionally, managers reported "mak[ing] a sign that takes [Plaintiff's] job down to the very basics to remind him of the outline of the process he should be following each time he is presented with a cart or stack of pots and pans, his end-of-day tasks, and a reminder about behavior." AR 506. Further, Plaintiff's manager stated that "these are the bare minimum expectations. If [Plaintiff] can't show marked improvement in these areas, then he can't continue to work in this function." *Id.*

Plaintiff's manager also stated that Plaintiff "continues to fail to get his work done in a timely manner . . . [h]is coworkers constantly have to help him out, more so than when anyone else works that position." AR 589. Additionally, Plaintiff's manager provided a side-by-side example of Plaintiff's daily work in comparison to his co-worker's daily work. The example explained that over the course of a particular workday Plaintiff washed a single item, while a full sink of dishes soaked and two carts of pots and pans awaited attention. *Id.* The following day, the same situation ensued, but Plaintiff was "walking around." *Id.* Plaintiff's co-worker Bob, however, had pots and pans soaking, a cart of dishes ready for soaking, a half of a rack ready for the dishwasher, and was working on another load of pots and pans in the sink. AR 589-90. Bob also cleaned the work area and cleaned a small cart of dishes while other items were soaking, all in a

portion of a single workday. AR 590. Plaintiff was less efficient than his coworker, demonstrating substandard work behavior.

There are additional accounts in the record of accommodations specific to Plaintiff's needs, including one-on-one daily training, outlines and signs for Plaintiff to follow, and altered managerial communication. AR 314, 393-94, 398, 429-64, 514, 599. The extensive evidence of Plaintiff's accommodations illustrates OHSU's efforts in maintaining Plaintiff's employment. These efforts extend beyond typical supervision and accommodation. Thus, the ALJ's determination that Plaintiff's previous employment was not substantially accommodated is not supported by substantial evidence in the record. The Court remands for the ALJ to consider the significant accommodations given to Plaintiff, determine whether it equated to a sheltered workplace, and reformulate the RFC in light of Plaintiff's history of significant accommodations at OHSU.

**B.  Ms. Brown's Lay Witness Testimony**

Plaintiff argues that the ALJ improperly discounted the testimony of his mother, Martha Ann Brown. Ms. Brown testified at Plaintiff's 2013 hearing and completed a third-party function report in 2011 describing Plaintiff's limitations. AR 50-57, 225-232. The ALJ has a duty to consider lay witness testimony, and must provide "reasons germane to each witness" in order to reject such testimony. 20 C.F.R. § 404.1513(d), 416.913(d); *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). The ALJ explains that he did not give Ms. Brown's testimony full weight because her statements were: (1) biased in

support of Plaintiff, (2) not supported by Plaintiff's ability to perform daily activities, and (3) not supported by Plaintiff's work history.[2] AR 26.

### 1. Biased in Support of Plaintiff

The ALJ concluded that Ms. Brown's testimony was unreliable because she was "clearly biased in support of her son . . . she primarily laments the claimant's loss of freedom as a result of conviction of a sex crime, and his sex offender status." AR 26. This determination is supported by substantial evidence in the record. For example, Ms. Brown's testimony fixated on claimant's conviction and resulting job loss, as well as Ms. Brown's personal guilt for her son's difficulties. Ms. Brown noted that she felt "like a total failure" as a parent, was unaware of her son's alleged molestation by a babysitter, and was thankful she was alive to help her son obtain disability benefits so he would not end up living and dying on the streets. AR 57, 232. Ms. Brown's function report also states that Plaintiff has been "consumed by grief/rage/depression/anger about his losses: loss of freedom due to felony conviction, loss of job, loss of income, loss of singing karaoke at bars, and being barred from places where kids are." AR 232.

Ms. Brown's statements also appear exaggerated, further demonstrating bias. For example, Ms. Brown's function report claimed that Plaintiff had trouble getting to the bathroom in time, but there is nothing in the record to support this claim. AR 226. Additionally, Ms. Brown claimed that when Plaintiff lived alone his apartment was in "shambles" and he lived in "squalor," although the record indicates that Plaintiff's lifestyle was simply "messy or dirty." AR 43-44.

---

[2] The ALJ also noted that Ms. Brown, too, is on disability, but does not offer further support for how this affects Ms. Brown's testimony. The Court declines to consider this as a germane reason for discounting Ms. Brown's testimony.

PAGE 11 – OPINION AND ORDER

Ms. Brown's exaggerations, statements about feeling a need to help Plaintiff obtain benefits, and statements regarding her own significant guilt about her past behavior as a mother, demonstrate that the ALJ's conclusion that Ms. Brown was biased in support of Plaintiff is supported by the record. Thus, this is a germane reason for discounting Ms. Brown's testimony.

### 2. Daily Living Activities

The ALJ also considered Plaintiff's daily living activities in determining Ms. Brown's credibility. AR 26. In particular, the ALJ relied on evidence that Plaintiff obtained a driver's license, navigated public transportation, appeared well groomed at an examination in 2011, and did his laundry at the shelter where he lived. *Id.* The ALJ may consider Plaintiff's daily living activities to form the basis of an adverse credibility rating in two ways—when the Plaintiff's activities contradict the lay witness' allegations of a disabling condition or the Plaintiff's activities meet a threshold for transferable work skills. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Here, the ALJ relied on the former, finding that the record of Plaintiff's activities contradicted Ms. Brown's testimony regarding the severity of Plaintiff's limitations.

Ms. Brown's testimony, however, corroborates a majority of the ALJ's findings regarding Plaintiff's daily living activities. Ms. Brown testified that Plaintiff uses public transportation to travel between Salem and Portland and that Plaintiff completes chores at his shelter. AR 226-27. Ms. Brown's 2011 function report also noted that Plaintiff does not have a car and instead takes the bus, implying that Plaintiff has the ability to drive, but simply lacks a vehicle. AR 225. Thus, those aspects of Plaintiff's daily living activities do not contradict Ms. Brown's testimony.

Ms. Brown also testified that Plaintiff often failed to change his clothes, has poor hygiene, and often smells. The ALJ provided one example in the record contradicting this testimony. The ALJ noted that Plaintiff appeared well groomed during Plaintiff's 2011

PAGE 12 – OPINION AND ORDER

psychological evaluation with Dr. Scharf. AR 26. The ALJ, however selected this one example of a notation that Plaintiff appeared well-groomed and ignored other evidence in the record demonstrating the opposite. Plaintiff testified that he, "had a couple bosses get on [him] about his hygiene . . . I had bosses sent [sic] me home because my body—I had body odor . . . they wanted me to go home and clean up." AR 44. In January 2010, Amy Swift observed that Plaintiff had a "disheveled appearance—inconsistent hygiene." AR 684. Additionally, while in jail Plaintiff was "dressed in rumpled jail attire, sporting a weeks [sic] growth of beard, with messed ragged cut hair." AR 777. Nevertheless, the ALJ reasoned that because Dr. Scharf claimed Plaintiff appeared well groomed at his 2011 psychological evaluation, Ms. Brown's testimony stating the opposite was unreliable. This conclusion by the ALJ is not supported by substantial evidence in the record.

### 3. Work History

The ALJ also concluded that Plaintiff's work history did not support Ms. Brown's testimony because Plaintiff "was able to maintain full-time employment for 10 years and only stopped working because of his arrest and incarceration." AR 26. According to Ms. Brown, Plaintiff began looking for work in junior high school, but was fired for poor performance from his job maintaining buses. AR 52. Ms. Brown also reported that Plaintiff received job coaching and "reasonable accommodation" while working at OHSU. AR 58. Plaintiff's work history, analyzed in the previous section, does not support the ALJ's conclusion that Ms. Brown's testimony is contradictory to the evidence. Thus, the ALJ failed to provide adequate reasoning for rejecting Ms. Brown's testimony based on Plaintiff's work history.

### 4. Conclusion

The ALJ's reliance on Plaintiff's work history and daily living activities to discredit Ms. Brown's testimony is not supported by substantial evidence in the record. The ALJ did,

PAGE 13 – OPINION AND ORDER

however, present one specific germane reason for discounting Ms. Brown's testimony—bias. Therefore, the Court affirms the ALJ's decision to discount Ms. Brown's testimony.

## CONCLUSION

The Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 25th day of November, 2015.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge